[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORAMDUM OF DECISION
CT Page 10250
This is an action for dissolution of marriage returnable to the Waterbury Superior Court.
The parties were married at Waterbury, Connecticut on February 28, 1976. The both have resided in the State of Connecticut for at least twelve months before the commencement of this action. The court has the requisite jurisdiction to proceed to a judgment in this case.
Having a heard the evidence and testimony offered at trial, and having considered the provisions of Sections 46b-81 and46b-82, Connecticut General Statutes. as well as other related statutes, the court makes the following findings and orders.
The parties have two children which are issue of the marriage, namely Jason and Ryan. At the time of the trial in this matter, both children had reached the age of majority and they are no longer within the jurisdiction of this court.
The evidence and testimony presented at the time of trial has established the allegation that the marriage of the parties has broken down irretrievably. Judgment may enter dissolving the marriage on that ground.
The plaintiff-wife is 41 years old, having been born on December 14, 1956. She enjoys reasonably good heath. She obtained her GED and worked both before and during the marriage. She was employed at Corey's Market making sandwiches for a brief period. When the parties moved to the Enfield area for about a year, the plaintiff obtained third shift employment at an Enfield nursing home working 30 hours per week in the evenings while the defendant-husband watched the children. When the parties moved back to Waterbury, she obtained employment at General Datacom in Naugatuck as a cafeteria worker. In February, 1976 the plaintiff obtained third shift employment (10:30 p. m. to 6:30 a.m.) at Southbury Training School and worked with retarded adult men in a "behavior cottage" which housed the more aggressive patients. That employment also provided the family with medical insurance. That employment later became second shift and eventually first shift.
At the time of trial the plaintiff was still employed at CT Page 10251 Southbury Training School and her financial affidavit indicates that her current gross weekly income is $1042.11. which nets her $601.12 per week.
The defendant is 41 years old having been born on June 19, 1957 the enjoys reasonably good health. He has basically had only two jobs in the last 23 years. At the time of the marriage he was employed by Kinney Shoes as a salesman. He remained with that company working his way to a management position. Approximately eight years the took a position with Westwind Marketing in sales and remains employed by that company. His financial affidavit indicates that his gross weekly income is $1346.16 which nets him $975.00. He testified that during the later years of the marriage he gave up a promotional opportunity in Boston after six months because the plaintiff would not relocate. He later passed up a promotional opportunity (district manager) because it would have required the parties to relocate to Pennsylvania, which the plaintiff would not agree to do.
During the later years of the marriage the parties experienced serious domestic problems including alleged alcohol abuse by both parties and an extramarital episode by the plaintiff. They also endured parental pains and difficulties including bouts of depression and an attempted suicide by one of their sons while he was still a minor.
While neither of the sons are minors, there was considerable testimony offered regarding them as it relates to use of marital assets for their benefit and the sacrifices the parties made for those children as they were growing up — including the plaintiff's personal leave from her employment for approximately five months while Ryan recovered from the physical and emotional effects of his attempted suicide. During that period she did not receive a salary and she reduced her deferred income plan at Southbury Training School by $6,000.00; she spent approximately $4,000.00 by way of credit card advances; and she spent several thousand dollars donated for the benefit of the son by her fellow employees.
There was also considerable testimony regarding Ryan's arrest and the subsequent disagreement between the parties as what was the best way to treat his detention in jail pending the posting of bond. The plaintiff, acting unilaterally, posted his bond and arranged for legal counsel for him with the use of marital funds. These acts won his allegiance and, at the same time brought on CT Page 10252 criticism by the defendant for not acting in the son's best interest and for depleting the parties' savings.
 ORDERS
I DISSOLUTION OF MARRIAGE
Having found that the marriage of the parties has broken down irretrievably, the court hereby decrees that the marriage of the parties is dissolved and they are single and unmarried.
II. ALIMONY
Based on the evidence and testimony, the court orders that the defendant pay to the plaintiff periodic alimony in the amount of $75.00 per week. That obligation shall continue until the first of the following events:
a. The death of either party;
b. The remarriage of the plaintiff;
 c. Cohabitation by the plaintiff, as that term is defined in the statutes;
d. September 3, 2005.
This obligation shall be secured by a lien against the defendant's deferred compensation plan which is valued at $10,700.00. Said lien shall remain in effect until the termination of the defendant's obligation to pay periodic alimony to the plaintiff.
III. PROPERTY DISTRIBUTION A. REAL PROPERTY — The plaintiff shall transfer all of her right, title and interest in an to the marital residence located at 107 Fairmount Street, Waterbury, and the defendant shall be solely responsible for all debts associated with that real property including, but not limited to, mortgage, taxes, insurance and all costs required to maintain said real property. The defendant shall convey to the plaintiff the sum of $8,000.00, which represents her equitable interest in said real property. That payment is to be made within six months from the date of this judgment. CT Page 10253
B. PERSONAL PROPERTY
1. PENSIONS — Each of the parties shall retain their right, title and interest in and to their respective pensions and/or deferred compensation plans.
2. PERSONALTY — Each of the parties shall retain the personal property listed on their respective financial affidavits, except as otherwise provided herein.
3. MISCELLANEOUS ORDERS
A. Medical Insurance — The plaintiff shall cooperate with the defendant's efforts to obtain medical insurance under COBRA through her employer. The cost of such insurance shall be the responsibility of the defendant.
B. Debts — Each of the parties shall be responsible for the liabilities which appear on their respective financial affidavits.
C. Counsel fees — Each party shall be responsible for their own counsel fees.
Having found that the marriage of the parties has broken down irretrievably, the court hereby decrees that the marriage is dissolved and the parties are single and unmarried.
By the Court,
Joseph W. Doherty, Judge